1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8    ROLANDO S. COLEMAN,

9                                    Plaintiff,

         v.
10
     SCOTT M. LIGHT, et al,
11
                                    Defendants.
12

Case No. 2:17-cv-00072-RBL-TLF

REPORT AND
RECOMMENDATION

Noted for January 25, 2019

13          This matter has been referred to the undersigned Magistrate Judge, *Mathews, Sec'y of*

14   *H.E.W. v. Weber*, 423 U.S. 261 (1976), 28 U.S.C. § 636(b)(1)(B), Local Rule MJR 4(a)(4).

15   Before the Court is defendants' motion for summary judgment. Dkt. 24.

16          Plaintiff has filed an amended civil rights complaint under 42 U.S.C. § 1983, alleging

17   defendants were deliberately indifferent to his medical needs in violation of his Eighth and

18   Fourteenth Amendment rights. Plaintiff also asserts state law claims of medical malpractice,

19   intentional infliction of emotional distress and outrage, negligence, and gross negligence. Dkt. 9,

20   Amended Complaint, p. 13. He seeks monetary, declaratory, and injunctive relief. *Id.* at p. 15.

21          Defendants request summary judgment on the basis that: (1) plaintiff is not entitled to

22   declaratory or injunctive relief as he is no longer incarcerated; (2) defendants are immune from

23   liability for damages because plaintiff has sued them in their official capacities; (3) plaintiff has

24
25

REPORT AND RECOMMENDATION - 1

failed to establish his Eighth Amendment rights were violated; and (4) plaintiff's state law claims are unsupported. Dkt. 24. Plaintiff has not responded to defendants' summary judgment motion.

The Court should grant defendants' motion because plaintiff is no longer incarcerated and therefore he is not entitled to declaratory or injunctive relief. Plaintiff also has failed to demonstrate either a violation of his constitutional rights or that he is entitled to relief on any of his state law claims.

FACTUAL BACKGROUND

In early August 2013, plaintiff, who was then a Washington State inmate at the Stafford Creek Corrections Center ("SCCC"), was transferred to the King County Jail ("KCJ"). Dkt. 24-1, p. 2, Exhibit 1 (Offender Management Network Information). In early September 2013, plaintiff injured his right arm, elbow, and wrist in an altercation with another inmate. Dkt. 9, Amended Complaint, p. 5.

Plaintiff alleges that as a result of his injury, he experienced severe pain, swelling, and numbness in his right wrist and elbow.[1] *Id.* Plaintiff saw an unknown physician assistant ("PA") at KCJ, who diagnosed him with bursitis. *Id.* Plaintiff alleges he also told the PA that he "felt something moving inside" his arm. *Id.*

Plaintiff was transferred back to SCCC on November 25, 2013. Dkt. 24, p. 2, Exhibit 1. Two days later, plaintiff saw defendant Scott Light, a certified PA. Dkt. 24-1, p. 2; Dkt. 25, Declaration of Scott Light (Light Decl.), p. 2. Plaintiff alleges he "thoroughly explained" what had happened to him at KCJ, and told defendant Light he still had pain and numbness, as well as significantly decreased arm and elbow range of motion. Dkt. 9, p. 5.

Plaintiff alleges that despite showing defendant Light where the object in his elbow was

---

[1] As plaintiff has filed no response to defendants' summary judgment motion, his factual claims are confined to his amended complaint.

REPORT AND RECOMMENDATION - 2

1    and demonstrating how much less range of motion he had, defendant Light insisted his range of

2    motion was fine and confirmed the bursitis diagnosis after referencing the medical records from

3    KCJ. Dkt. 9, Amended Complaint, p. 6. Plaintiff alleges defendant Light refused to examine him

4    and never offered him any treatment. *Id.*

5          Plaintiff alleges that from November 2103 until February 2014, he complained to

6    defendant Light about "continuous and severe" elbow pain, elbow and hand numbness, and that

7    he told defendant Light his symptoms were getting worse, that he was losing a significant

8    amount of grip, and that he had extreme difficulty sleeping. *Id.* Plaintiff alleges defendant Light

9    refused to offer any treatment. *Id.*

10          Defendant Light asserts that when he saw plaintiff in late November 2013, plaintiff did

11    not complain about his wrist, elbow, or arm. Dkt. 25, Light Decl., p. 2. Defendant Light

12    requested plaintiff's KCJ medical records and ordered x-rays of plaintiff's right hand. *Id.*

13          Defendant Light saw plaintiff again in early January 2014. Plaintiff complained about

14    chronic pain in the right hand, but not of elbow pain. *Id.* X-rays of plaintiff's hand were normal.

15    *Id.*; Dkt. 25-1, Exhibit C. In late January 2014, defendant Light and plaintiff discussed follow up

16    care relating to the right hand. Dkt. 25, p. 2. Plaintiff did not mention elbow pain. *Id.*

17          In February 2014, plaintiff was transferred to the Airway Heights Corrections Center

18    ("AHCC"). Dkt. 9, p. 6. Plaintiff alleges that while at AHCC, he complained to "the medical

19    provider there" about the pain and numbness he was experiencing in his right arm, elbow, and

20    hand. Dkt. 9, p. 7. Plaintiff alleges he received: A diagnosis of a fracture in his right elbow, and a

21    recommendation that he should have surgery. *Id.*

22          Patrick Peterson, a certified PA,[2] asserts that he saw plaintiff on a number of occasions in

23

24    [2] Mr. Peterson is not a named defendant in this lawsuit.

25

REPORT AND RECOMMENDATION - 3

February, March, and April 2014. Dkt. 26, Declaration of Patrick Peterson (Peterson Decl.), p. 2. Plaintiff complained of hand pain, but not arm or elbow pain. *Id.* In late May 2014, plaintiff told PA Peterson that there might be a loose body in his elbow, but that his elbow did not hurt. *Id.*

Early June 2014 x-rays showed a loose piece of bone near plaintiff's right elbow. *Id.* PA Peterson states that he sent the x-rays to an orthopedic surgeon, who recommended monitoring rather than surgery. *Id.* During a follow-up examination in mid-June 2014, PA Peterson noted plaintiff was able to perform his activities of daily living and tested plaintiff's grip strength, which was full. *Id.*; Dkt. 26-1, Attachment C (treatment notes dated 6-12-14).

On plaintiff's request, PA Peterson sought authorization for an orthopedic consultation, which was denied by the Washington State Department of Corrections' Care Review Committee ("CRC")[3] in late June 2014, as not medically necessary. Dkt. 26, Peterson Decl., p. 2; Dkt. 26-1, Attachment D (Care Review Committee Report dated 6/18/2014). Also in late June 2014, plaintiff complained to PA Peterson of continuing issues with his right arm, including pain. Dkt. 26, p. 2.

PA Peterson recommended physical therapy, which plaintiff attended for three sessions without improvement. *Id.* at p. 3. PA Peterson again requested an orthopedic consultation, which the CRC denied in late August 2014, as not medically necessary. *Id.*; Dkt. 26-1, Attachment E (Care Review Committee Report dated 8/27/2014). The CRC instead recommended monitoring for atrophy and reduced range of motion. *Id.*

Plaintiff was transferred to the Monroe Correctional Complex ("MCC") in June 2015. Dkt. 9, Amended Complaint, p. 8; Dkt. 26, Peterson Decl., p. 3. PA Peterson states that between

---

[3] The CRC consists of an inmate's physicians, physician assistants, advanced registered nurse practitioners, and other health care staff who review the medical necessity of requested treatment. Dkt. 27, Declaration of Gabrielle Gaspar, M.D., (Gaspar Decl.) p. 2. The CRC determines by a simple majority vote whether the requested treatment is medically necessary. *Id.* Treatment that is deemed not medically necessary is denied. *Id.* Inmates can pursue treatment that is not medically necessary at their own expense. *Id.*

REPORT AND RECOMMENDATION - 4

August 2014, and his transfer to MCC, plaintiff complained to him of elbow pain only one time, and made no additional requests for treatment during that time. Dkt. 26, p. 3.

In mid-July 2015, plaintiff saw Patricia Christiansen, a certified PA, for "right elbow pain and swelling that started when lifting weights."[4] Dkt. 28, Declaration of Patricia Christiansen (Christiansen Decl.), p. 2; Dkt. 28-1, Attachment A (Primary Encounter Report dated 7/13/2015). Plaintiff reported having pain that kept him awake at night. *Id.* PA Christiansen informed plaintiff that because he had full, nearly symmetric use of his arm and a lack of atrophy, the risks of surgery outweighed its possible benefits. *Id.*

Plaintiff was transferred to the Coyote Ridge Corrections Center in September or October 2015. Dkt. 9, Amended Complaint, p. 8. In November 2015, plaintiff saw Shane Ririe, a certified PA. Plaintiff did not appear to be in any distress. Dkt. 29, Declaration of Shane Ririe (Ririe Decl.), p. 2. X-rays of plaintiff's elbow showed essentially no changes. *Id.*; Dkt. 29-1, Attachment A.

In February 2016, plaintiff saw Daniel Delp, a certified PA,[5] who noted lack of atrophy and full range of arm motion. Dkt. 30, Declaration of Daniel Delp (Delp Decl.), p. 2; Dkt. 30-1, Attachment A (Primary Encounter Report dated 2/18/2018). Plaintiff complained of increasing pain with any movement. Dkt. 30-1. PA Delp sent plaintiff's November 2015 x-rays to an orthopedic physician, who determined that surgery was not necessary due to plaintiff's full range of motion and lack of atrophy or swelling.[6] Dkt. 30, Delp Decl., p. 2; Dkt. 30-1, Attachment A.

---

[4] Plaintiff alleges that the "physician" he saw at MCC told him it was a sports injury, and that she insisted he was doing well even though he insisted he was not. Dkt. 9, p. 8.

[5] PA Christiansen, PA Ririe, and PA Delp are not named defendants in this lawsuit.

[6] Plaintiff alleges PA Delp "apologized profusely" for the treatment he was not getting from other medical providers and appeared to be upset about that. Dkt. 9, p. 9. Plaintiff alleges PA Delp recommended he get treatment as soon as possible and referred him to the CRC for an orthopedic consultation. *Id.* Plaintiff further alleges that after the CRC denied the consultation request, PA Delp suggested he take legal action due to the severity of the lack of care he had received. *Id.*

1    Plaintiff was transferred back to SCCC in April 2016. Dkt. 9, Amended Complaint, p. 9.

2  When plaintiff saw defendant Light later that month, he did not mention arm or elbow pain. Dkt.

3  25, Light Decl., p. 3.

4    At a follow-up visit in early August 2016, plaintiff complained to defendant Light about

5  right elbow pain resulting from his KCJ altercation. *Id.*; Dkt. 25-1, Attachment E (Outpatient

6  Progress Record dated 08/04/2016). Plaintiff accused defendant Light of misdiagnosing his

7  injury as bursitis. [7] *Id.* An examination report described "a very well-developed right upper arm,"

8  with full range of motion and strength, and "no real pain to palpation" around the area where the

9  "mobile 1 cm mass" in plaintiff arm was located. Dkt. 25-1, Attachment E.

10    Defendant Light submitted an orthopedic consultation request to the CRC. Dkt. 25, pp. 3-

11  4; Dkt. 25-1, Attachments E and F. He also ordered nerve conduction studies and an

12  electromyogram of plaintiff's right arm due to plaintiff's complaints of numbness. Dkt. 25, pp. 3-

13  4; Dkt. 25-1, Attachment E. The CRC denied the request as not medically necessary. Dkt. 25-1,

14  Attachment H (Care Review Committee Report dated 8/17/2016).

15    At a late August 2016 visit, plaintiff complained to defendant Light of chronic right

16  elbow and right upper arm pain. Dkt. 25, and Dkt. 25-1, Attachment I (Outpatient Progress

17  Record dated 08/23/2016). Defendant Light noted that plaintiff appeared to be managing his

18  chronic right elbow pain "quite well" and seemed "to have use of his right arm." *Id.* Light

19  documented that plaintiff was able to extend his right arm fully several times without problems.

20  *Id.*

21    Defendant Light saw plaintiff in mid-October 2016. They discussed the results of the

22  August 2016 nerve conduction studies and electromyogram, which Light interpreted as

23

24  [7] Plaintiff alleges he "politely confronted" defendant Light about the lack of proper diagnosis, although he indicates
   this occurred at the April 2016 visit. Dkt. 9, p. 9.

25

1    numbness caused by carpal tunnel syndrome. Dkt. 25, Light Decl., p. 4; Dkt. 25-1, Attachment J

2    (Outpatient Progress Report dated 10/13/2016). Plaintiff told defendant Light that he thought this

3    "made quite a bit of sense," given his past history of doing repetitive motion work and his

4    recollection that this previously had been suggested by another provider. Dkt. 25, p. 4; Dkt. 25-1,

5    Attachment J. Light asserts that he found, as he examined plaintiff, some wrist and forearm pain,

6    but no increase in numbness or hand symptoms, full extension and flexion of the elbow, and full

7    grip strength. *Id.* Defendant Light issued plaintiff a wrist brace. *Id.*

8         Plaintiff was released from prison on September 5, 2017. Dkt. 17; Dkt. 24, p. 8; Dkt. 25,

9    p. 4.

10    DISCUSSION

11         Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that

12    there is no genuine issue as to any material fact and that the moving party is entitled to judgment

13    as a matter of law. Federal Rule of Civil Procedure ("FRCP") 56(c); *Morrison v. Hall*, 261 F.3d

14    896, 900 (9th Cir. 2001). When deciding whether summary judgment should be granted, the

15    district court must view the evidence and draw all inferences "in the light most favorable to the

16    nonmoving party." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-

17    31 (9th Cir. 1987).

18         The moving party has "the burden of establishing the basis for its motion and identifying

19    evidence that demonstrates the absence of a genuine issue of material fact." *Davis v. United*

20    *States*, 854 F.3d 594, 598 (9th Cir. 2017). If the moving party meets its burden, the nonmoving

21    party may not rest on the allegations or denials of his or her pleading, but must by affidavits or as

22    otherwise provided in FRCP 56, set forth specific facts showing there is a genuine issue for trial.

23    FRCP 56(e)(2). If the nonmoving party does not do so, summary judgment, if appropriate, will

24

25

1  be rendered against that party. *Id.*; *Hernandez v. Spacelabs Medical Inc.*, 343 F.3d 1107, 1112

2  (9th Cir. 2003).

3      The moving party must establish the absence of a genuine issue of fact for trial. *Anderson*

4  *v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). To demonstrate a genuine issue of material

5  fact, the nonmoving party must "make a showing sufficient to establish the existence of an

6  element essential to that party's case, and on which that party will bear the burden of proof at

7  trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he record taken as a whole" must

8  be sufficient to "lead a rational trier of fact to find for the nonmoving party." *Ricci v. DeStafano*,

9  557 U.S. 557, 586 (2009).

10      Mere disagreement or bald assertion that a genuine issue of material fact exists thus does

11  not preclude summary judgment. *California Architectural Building Prods., Inc. v. Franciscan*

12  *Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). The nonmoving party "must produce at

13  least some 'significant probative evidence tending to support the complaint.'" *T.W. Electrical*

14  *Serv.*, 809 F.2d at 630 (quoting *Anderson*, 477 U.S. at 290).

15  I.    Plaintiff's Claims for Declaratory and Injunctive Relief

16      Plaintiff seeks declaratory and injunctive relief for the purpose of obtaining surgery and

17  other medical and rehabilitative treatment and therapy. Dkt. 9, Amended Complaint, p. 15. Yet

18  an inmate's release from prison while his or her claims are pending generally moots any claims

19  for injunctive or declaratory relief, unless the underlying lawsuit has been certified as a class

20  action. *Alvarez v. Hill*, 667, F.3d 1061, 1064 (9th Cir. 2012).

21      A claim is moot if it is no longer "a present, live controversy and if no effective relief can

22  be granted," including where the issues sought to be adjudicated are mooted by developments

23  subsequent the complaint's filing. *Flowers v. Ahern*, 650 F.Supp.2d 988, 991 (N.D. Cal. 2009)

24

25

1   (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). For requests for injunctive relief, mootness is

2   determined "in light of the present circumstances." *Id.* (citing *Mitchell v. Dupnik*, 75 F.3d 517,

3   528 (9th Cir. 1996)).

4          In determining whether an exception to the mootness doctrine applies, the Court "cannot

5   assume that criminal conduct will be recurring" on plaintiff's part. *Alvarez*, 667 F.3d at 1065.

6   "[A]nticipating whether and when a party will be charged with a crime is too speculative and

7   conjectural." *Id.* (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-95 (1974)). Plaintiffs are

8   assumed, furthermore, to "conduct their activities within the law and so avoid prosecution and

9   conviction." *Id.*

10          Plaintiff was released from prison on September 5, 2017. Dkt. 17; Dkt. 24, p. 8; Dkt. 25,

11  p. 4. The only way plaintiff can return to prison and again be subject to the harm for which he

12  seeks declaratory and injunctive relief is to violate the law. Because the Court cannot assume he

13  will violate the law, the Court should deny his claims for such relief.

14  II.   Claims for Damages Against DOC Secretary Stephen Sinclair and DOC Chief Medical
        Officer Steven Hammond

15          Plaintiff seeks compensatory and punitive damages. Dkt. 9, p. 15. Defendants argue that

16  because plaintiff has sued defendants DOC Secretary Stephen Sinclair and DOC Chief Medical

17  Officer Steven Hammond in their official capacities, his claims for damages against them must

18  be dismissed.

19          A state has Eleventh Amendment immunity to lawsuits brought by its own citizens in

20  federal court. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). A lawsuit brought against a state

21  official in his or her official capacity "is no different from a suit against the State itself." *Flint v.*

22  *Dennison*, 488 F.3d 816, 824 (9th Cir. 2007) (quoting *Will v. Michigan Dept. of State Police*, 491

23  U.S. 58, 71 (1989)).

24

25

1    Plaintiff does not state in what capacity he is suing defendants Sinclair and Hammond.

2    Dkt. 9, pp. 1-2, 13-16. Where a plaintiff seeks damages, courts assume state officials named in

3    the complaint are sued in their personal capacities, even if the complaint "does not explicitly

4    mention the capacity in which they are sued." *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir.

5    1999). For purposes of plaintiff's damages claims, therefore, defendant Sinclair and defendant

6    Hammond are presumed to be sued in their individual capacities.

7    Accordingly, the Court should find this is not a proper basis on which to grant summary

8    judgment for defendants Sinclair and Hammond.

9    III.    Eighth Amendment Deliberate Indifference Claim

10    Plaintiff alleges defendants were deliberately indifferent to his serious medical needs in

11    violation of his Eighth Amendment rights. Specifically, plaintiff alleges defendants failed to

12    provide him timely and adequate medical care, including consultation with a specialist and

13    surgery to fix his injury to his right arm. Dkt. 9, p. 14. Plaintiff alleges this failure of care caused

14    pain, suffering, and "emotional anguish," and prolonged his rehabilitation. *Id.*

15    A.    *Eighth Amendment Standard*

16    The government is obligated under the Eighth Amendment "to provide medical care for

17    those whom it is punishing by incarceration." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th

18    Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)). To establish a constitutional

19    violation for inadequate medical care, an inmate must demonstrate "deliberate indifference" to

20    "serious medical needs." *Id.* (quoting *Estelle*, 429 U.S. at 104). The inmate must meet both an

21    "objective" standard and a "subjective" standard. *Id.*

22    Under the objective standard, the inmate "must demonstrate the existence of a serious

23    medical need." *Id.* Such a need exists if the defendant's failure to treat the injury "could result in

24

25

REPORT AND RECOMMENDATION - 10

1   further significant injury" or could cause "unnecessary and wanton infliction of pain." *Id.*

2   (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). This can be shown by: an injury "a

3   reasonable doctor or patient would find important and worthy of comment or treatment"; a

4   medical condition that "significantly affects" an inmate's daily activities; or the presence of

5   "chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir.

6   1992)).

7       The subjective standard is met if the official "knows of and disregards an excessive risk

8   to inmate health and safety," which "requires more than ordinary lack of due care." *Colwell*, 763

9   F.3d at 1066 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), and *Toguchi v. Chung*, 391

10  F.3d 1051, 1057 (9th Cir. 2004)). The official not only must "be aware of facts from which the

11  inference could be drawn that a substantial risk of serious harm exists," but the official "must

12  also draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 837); *Toguchi*, 391 F.3d at 1057 (if

13  the official "should have been aware of the risk, but was not," the official will not have violated

14  an inmate's Eighth Amendment rights "no matter how severe the risk").

15      This is a high burden of proof – a showing of medical malpractice or negligence is not

16  enough to prove deliberate indifference. *Hamby v. Hammond,* 821 F.3d 1085, 1092 (9th Cir.

17  2016). Rather, the plaintiff must produce persuasive evidence of "a purposeful act or failure to

18  respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference."

19  *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006).

20      A plaintiff may establish deliberate indifference when a state official denies, delays or

21  intentionally interferes with medical treatment, or by the way in which a medical official

22  provides care. *Colwell*, 763 F.3d at 1066. The subjective state of mind plaintiff must demonstrate

23  here is "subjective recklessness" – that the course of treatment the defendants chose was, under

24

25

the circumstances, medically unacceptable, and that the defendants consciously disregarded an

excessive risk to the plaintiff's health in choosing that course. *Id.* at 1068; *Farmer*, 511 U.S. at

839.

B.    *Serious Medical Need*

Defendants argue plaintiff does not have a serious medical need, because he has not

shown that failure to treat his injury could result in either "a further significant injury" or "the

unnecessary and wanton infliction of pain." *Colwell*, 763 F.3d at 1066. Specifically, defendants

note plaintiff has not demonstrated that the treatment he received caused additional significant

injury or resulted unnecessary and wanton pain.

But a serious medical need exists if failure to treat the condition *could* cause additional

significant injury. *Id.* Further, the Ninth Circuit has held that a serious medical need may be

shown by an injury "a reasonable doctor or patient would find important and worthy of comment

or treatment." *Id.* Here, both plaintiff and his medical care providers, including defendant Light,

found his injury to be worthy of comment and treatment; defendant Light referred plaintiff to the

CRC for an orthopedic consultation and ordered diagnostic studies of his arm. Dkt. 25, Light

Decl., pp. 3-4; Dkt. 25-1, Attachments E and F.

Accordingly, the Court should find plaintiff's injury constituted a serious medical need.

C.    *The CRC "Doe" Defendants*

Plaintiff alleges each of the named defendants, as well as "the listed CRC members,"

were deliberately indifferent to his medical needs. Dkt. 9, p. 14. First, plaintiff fails to indicate

which "CRC members" were deliberately indifferent. *Id.* Nor does he name as defendants any

specific individuals who served on the CRC in relation to his medical treatment requests, other

than in their capacity as "Doe" defendants. *Id.* at 14-15; *OSU Student Alliance v. Ray*, 699 F.3d

1053, 1069 (9th Cir. 2012) (plaintiff must show how each official through his or her own actions

violated a constitutional right).

Second, plaintiff does not produce any evidence to show how any of the CRC members

of the CRC panels that denied his treatment requests voted on those requests. Nor do the CRC

reports themselves indicate how the individual CRC members voted. Dkt. 25, Light Decl., Dkt.

25-1, Attachment H; Dkt. 26, Peterson Decl., Dkt. 26-1, Attachments D and E. To the extent any

CRC panel members voted to grant plaintiff's requests, they were not deliberately indifferent to

his serious medical needs.

Third, as discussed below in regard to defendant Hammond's participation in the CRC

panels, the evidence fails to show the denials of plaintiff's treatment requests were medically

unacceptable.

D.    *DOC Secretary Sinclair*

Plaintiff has not set forth specific facts showing how DOC Secretary Sinclair harmed

him. Instead, plaintiff has named defendant Sinclair only in his supervisory capacity. *Felarca v.*

*Birgeneau*, 891 F.3d 809, 819-20 (9th Cir. 2018) (supervisory official may liable under § 1983

only if the official personally participated in the constitutional deprivation, or set in motion a

series of acts by others or knowingly refused to terminate a series of acts by others, which the

supervisory official knew or reasonably should have known would cause a constitutional injury).

Other than naming DOC Secretary Sinclair as a defendant, plaintiff describes no actions by

defendant Sinclair in relation to plaintiff's treatment.

E.    *Chief Medical Officer Hammond*

Chief Medical Officer Hammond is listed as a present voting member on each of the June

2014, August 2014, and August 2016 CRC panels that denied plaintiff's requests for treatment.

1    Dkt. 25, Light Decl., Dkt. 25-1, Attachment H; Dkt. 26, Peterson Decl., Dkt. 26-1, Attachments

2    D and E. But as with the other members of the CRC panels, the CRC reports do not indicate how

3    defendant Hammond voted. *Id.* Given that the CRC determines as a whole whether or not to

4    grant a request for treatment by a simple majority vote, it is entirely possible that defendant

5    Hammond voted to grant plaintiff's requests. Plaintiff does not present any evidence to show

6    otherwise.

7          Even if defendant Hammond had voted to deny the treatment requests, plaintiff has not

8    shown the denials rose to the level of deliberate indifference. Examination findings were largely

9    unremarkable. Nor has plaintiff shown a need for any greater treatment than what he already has

10   received. Indeed, plaintiff seeks an orthopedic consultation and surgery, yet when PA Delp

11   consulted an orthopedic surgeon in February 2016, surgery was determined to be unnecessary.

12   Dkt. 30, Delp Decl., p. 2; Dkt. 30-1, Attachment A.

13         Although plaintiff alleges PA Delp suggested he take legal action due to the lack of care

14   he received, plaintiff offers no evidentiary support for that allegation. *Hernandez v. Spacelabs*

15   *Medical Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (the nonmoving party cannot defeat summary

16   judgment simply by referring to allegations in the complaint). Further, while plaintiff may not

17   agree with his treatment providers as to the appropriateness of the medical care he received, this

18   is insufficient to overcome summary judgment. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir.

19   2004) (difference of medical opinion is not sufficient, as a matter of law, to establish deliberate

20   indifference).

21         Accordingly, the Court should find defendant Hammond was not deliberately indifferent

22   to plaintiff's serious medical needs. Plaintiff has not shown defendant Hammond was aware of

23

24

25

1   facts from which the inference could be drawn that a substantial risk of serious harm to his health

2   existed, and that defendant Hammond actually drew that inference.

3       F.      *PA Scott Light*

4       Plaintiff also alleges PA Scott Light was deliberately indifferent to his serious medical

5   needs. Yet other than the allegations contained in the amended complaint, plaintiff has not

6   produced any evidence to support his claim. Further, viewed in the light most favorable to the

7   plaintiff as a non-moving party, the evidence shows defendant Light did not act inappropriately

8   in any way in regard to plaintiff's treatment.

9       When defendant Light first saw plaintiff in November 2013, plaintiff did not complain

10  about his wrist, elbow, or arm. Light Decl., Dkt. 25, p. 2. Defendant Light requested plaintiff's

11  KCJ medical records and ordered x-rays of plaintiff's right hand. *Id.* Plaintiff complained of right

12  hand pain but not elbow pain in January 2014. *Id.* Defendant Light ordered x-rays, which

13  Defendant Light interpreted as normal. *Id.*; Dkt. 25-1, Exhibit C. Plaintiff also did not complain

14  of elbow pain later that month when defendant Light discussed follow up care regarding his

15  hand. *Id.*

16      Plaintiff did not mention arm or elbow pain in April 2016 at his next appointment with

17  defendant Light. Dkt. 25, p. 3.Plaintiff complained about right elbow pain months later – in

18  August of 2016. *Id.*; Dkt. 25-1, Attachment E. Yet examination findings revealed a well-

19  developed right upper arm, full range of motion and strength, and no real pain to palpation

20  around the area where the object in plaintiff's arm was located. *Id.* Defendant Light submitted an

21  orthopedic consultation request to the CRC. Dkt. 25, Light Decl., pp. 3-4; Dkt. 25-1,

22  Attachments E and F. There is no evidence that defendant Light participated in or had any

23  influence over any of the CRC's decisions.

24

25

1    Defendant Light also ordered nerve conduction studies and an electromyogram. Dkt. 25,

2    pp. 3-4; Dkt. 25-1, Attachment E. Although plaintiff complained of chronic right elbow and

3    upper arm pain in late August 2016, he appeared to be managing his chronic elbow pain well and

4    to have full use and extension of his arm. Dkt. 25-1, Attachment I. In October 2016, plaintiff

5    agreed that a diagnosis of carpal tunnel syndrome made sense, and while he had some wrist and

6    forearm pain, he exhibited full extension and flexion of the elbow and full grip strength. Dkt. 25,

7    p. 4; Dkt. 25-1, Attachment J. Defendant Light issued plaintiff a wrist brace. *Id.*

8    When plaintiff complained of right arm or elbow pain and other symptoms, defendant

9    Light responded by ordering diagnostic studies, submitting CRC requests for orthopedic

10    consultations, and issuing a wrist brace. There is no evidence that any of defendant Light's

11    actions or decisions concerning plaintiff's treatment were medically unacceptable. Nor has

12    plaintiff shown that to the extent defendant Light was aware of plaintiff's KCJ and other

13    institutional medical records, those records should have and in fact did put defendant Light on

14    notice of a need for additional treatment.

15    Accordingly, the Court should find defendant Light was not deliberately indifferent to

16    plaintiff's serious medical needs.

17    IV.    Fourteenth Amendment Claims

18        A.    *Due Process Claims*

19    Plaintiff alleges defendants' failure to provide him adequate medical treatment violated

20    his Due Process rights. Dkt. 9, p. 14. It is not clear whether plaintiff is asserting a substantive due

21    process or a procedural due process claim. *Id.* Either way, his claim fails.

22    To establish a substantive due process violation, the plaintiff must prove the official's

23    action was "clearly arbitrary and unreasonable, having no substantial relation to the public

24

25

1    health, safety, morals, or general welfare." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996),

2    *overruled on other grounds as recognized by Nico Holding Corp. v. Baujikian*, 491 F.3d 1086

3    (9th Cir. 2007). Where a particular constitutional Amendment "provides an explicit textual

4    source of constitutional protection" against a specific type of government behavior, though, that

5    Amendment rather than "the more generalized notion of 'substantive due process,' must be the

6    guide for analyzing" such a claim. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*

7    *v. Connor*, 490 U.S. 386, 395 (1989)).

8        Here, that particular textual source of constitutional protection is the Eighth Amendment,

9    which protects against the deliberate indifference of prison officials to inmates' serious medical

10   needs. The more generalized substantive due process protections of the Fourteenth Amendment,

11   therefore, do not apply. Even if those more generalized protections did apply, plaintiff fails to

12   show that any of the named defendants' actions were clearly arbitrary and unreasonable, having

13   no substantial relation to the public health, safety, morals, or general welfare.

14       To the extent plaintiff is asserting a procedural due process claim, he has not alleged or

15   shown that he was denied any process in relation to the deprivation of a protected liberty or

16   property interest he was otherwise due. *Gustay Christian Fellowship v. Cnty. of San Diego*, 670

17   F.3d 957, 983 (9th Cir. 2011) (due process claim requires a protected liberty or property interest,

18   a government deprivation of that interest, and lack of process).

19       Accordingly, the Court should find there is no genuine dispute of material fact

20   concerning plaintiff's due process claim under the Fourteenth Amendment.

21       B.    *Equal Protection Claim*

22       Plaintiff alleges defendant Hammond and "individual CRC members" violated his equal

23   protection rights, because "others got help while I did not." Dkt. 9, Amended Complaint, p. 14.

24

25

REPORT AND RECOMMENDATION - 17

Plaintiff fails to indicate which "CRC members" treated him differently. *Id.* Plaintiff does not name as defendants any individuals who served on the CRC in relation to his treatment requests, other than in their capacity as "Doe" defendants.

To state a valid equal protection claim under § 1983, a plaintiff must show the defendant acted with an intent or purpose to discriminate against plaintiff based the plaintiff's membership in a protected class. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). The Supreme Court also has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Under either legal theory, plaintiff's claim fails. First, plaintiff does not base his claim on his membership in a protected class. Plaintiff has produced no evidence that other inmates similarly situated to him actually received treatment while he was denied treatment. The Court should find plaintiff's equal protection claim against defendant Hammond is without merit as well.

V.    Plaintiff's State Law Claims

The district court has discretion to retain jurisdiction over state law claims. *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995). Jurisdiction exists when the federal and state law claims are "sufficiently substantial to confer federal jurisdiction," and "a common nucleus of operative fact" exists between the claims. *Id.* The federal claims must be "absolutely devoid of merit or obviously frivolous" to divest the district court of jurisdiction. *Brady*, 51 F.3d at 816. Factors of economy, convenience, fairness, and comity are considered in making this determination. *Id.*

1    In addition to his federal claims, plaintiff asserts state law claims of medical malpractice,

2    intentional infliction of emotional distress and outrage, negligence, and gross negligence. Dkt. 9,

3    p. 14. Plaintiff's federal and state law claims are not sufficiently substantial to confer jurisdiction

4    on the Court, for the reasons stated above; yet it may be arguable whether issues of economy,

5    convenience, fairness, and comity weigh in favor of retaining jurisdiction over the state law

6    claims. If this Court nevertheless decides that plaintiff's claims are sufficiently substantial to

7    retain jurisdiction over those claims, the state law claims should be rejected because there is no

8    genuine dispute of material fact as to any of those allegations.

9        A.    *Medical Malpractice*

10    To establish medical malpractice in Washington, a plaintiff must prove the injury resulted

11    from the health care provider's failure to follow "the accepted standard of care."[8] RCW

12    7.70.030(1); *Morinaga v. Vue*, 85 Wn.App. 822, 831 (1997). The plaintiff must show the health

13    care provider "failed to exercise that degree of care, skill, and learning expected of a reasonably

14    prudent health care provider" of the same profession or class, "acting in the same or similar

15    circumstances." RCW 7.70.040(1); *Grove v. PeaceHealth St. Joseph Hosp.*, 182 Wash. 2d 136,

16    144 (2014).

17    In general, the accepted standard of care "must be established by expert testimony."

18    *Grove*, 182 Wn.2d at 144. Medical facts may be established by lay testimony only if they are

19    "observable by [a layperson's] senses and describable without medical training." *Harris v.*

20    *Robert C. Groth, M.D.*, 99 Wn.2d 438, 449 (1983) (citation omitted). "[A] layperson generally

21    cannot observe or describe whether a particular medical practice is reasonably prudent." *Miller v.*

22    *Jacoby*, 102 Wn. App. 256, 261 (2000) (citing *Harris*, 99 Wn.2d at 449); *Morinaga*, 85 Wn.

23

---

24    [8] The definition of "health care provider" includes both physicians and physician assistants. RCW 7.70.020(1).

25

1   App. at 832 (once a defendant establishes the plaintiff "lacks competent expert testimony," the

2   defendant is entitled to summary judgment).

3       Plaintiff has not produced expert testimony to establish defendant Hammond or

4   defendant Light failed to follow the accepted standard of care in treating his injury. Plaintiff

5   asserts he should have been provided with an orthopedic consultation, surgery, and rehabilitative

6   care. But whether these medical practices would have been reasonably prudent for defendants to

7   take in regard to plaintiff's particular injury, is precisely the type of medical fact for which

8   expert testimony is required. *Miller*, 102 Wn. App. at 263 (expert testimony needed to determine

9   whether a physician's actions in placing a drain in the plaintiff's body were within the standard

10  of care).

11      B.      *Intentional Infliction of Emotional Distress and Outrage*

12      To prevail on a claim for the tort of outrage,[9] the plaintiff must prove: (1) the defendant

13  "engaged in extreme and outrageous conduct"; (2) the defendant "intentionally or recklessly

14  inflicted emotional distress" on the plaintiff; and (3) "severe emotional distress" to the plaintiff

15  "actually resulted." *Strong v. Terrell*, 147 Wn.App. 376, 385 (2008). Any claim for the tort of

16  outrage requires behavior that is "so outrageous in character, and so extreme in degree, as to go

17  beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

18  a civilized community." *Kloepfel v. Bokor*, 149 Wn.2d 192, 196 (2003).

19      Plaintiff does not articulate facts or produce evidence to support a claim that any specific

20  acts or omissions of the defendants could possibly rise to this level of outrageousness.

21  Accordingly, there is no genuine dispute of material facts and plaintiff's has failed to establish

22  the necessary elements for the tort of outrage.

23  ─────────────────

24  [9] The tort of "outrage" and the tort of "intentional infliction of emotional distress" are the same. *Kloepfel v. Bokor*, 149 Wn.2d 192, 193 n.1 (2003).

25

REPORT AND RECOMMENDATION - 20

C.    *Negligence and Gross Negligence*

To establish an action for negligence, the plaintiff must demonstrate: (1) the existence of a duty owed to the plaintiff; (2) a breach of that duty; (3) a resulting injury; and (4) a "proximate cause between the breach and the injury." *Hutchins v. 1001 Fourth Ave. Assoc.*, 116 Wn.2d 217, 220 (1991). "Gross negligence" is negligence that is "substantially and appreciably greater than ordinary negligence"; it is "the failure to exercise slight care." *Johnson v. Spokane to Sandpoint, LLC*, 176 Wn. App. 453, 460 (2013) (citations omitted).

Plaintiff has not produced any evidence to show either Defendant Light as plaintiff's treatment provider, or Defendant Hammond as a member of the CRC reviewing plaintiff's requests for treatment, was negligent in exercising any duty of care in relation to treatment for his right arm injury, let alone the duty to exercise slight care. Accordingly, the Court should find there is no genuine dispute of material facts as to plaintiff's negligence claims, and plaintiff fails to meet the elements of the cause of action for negligence.

<u>RECOMMENDATION</u>

Based on the reasoning described above, the Court, therefore, should GRANT defendants' motion for summary judgment (Dkt. 24) and DISMISS plaintiff's amended complaint (Dkt. 9) with prejudice.

If the Court adopts the undersigned's Report and Recommendation, leave to proceed in forma pauperis for purposes of appeal may be denied if the appeal is frivolous or taken in bad faith. *Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002); 28 U.S.C. § 1915(a)(3). The undersigned recommends plaintiff be denied such leave. Plaintiff has failed to come forth with any evidence to support his claims, and therefore any appeal of the Court's order adopting the Report and Recommendation would be frivolous or taken in bad faith.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **January 25, 2019**, as noted in the caption.

Dated this 4th day of January, 2019.

Theresa L. Fricke
United States Magistrate Judge